The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. The first case for argument this morning is 20-1440, Traxcell Technologies v. Nokia Solutions and Networks. Mr. Ramey, whenever you're ready. Good morning, Judge Prost, Judge O'Malley, and Judge Stahl. If it pleases the court, may I begin? Please, do. A pivotal issue in this appeal is whether the common claim term location needs construction, and if so, what is that proper construction? The district court improperly construed location to mean location that does not merely position the grid pattern. The district court's rationale for such construction is based on improper reading of the prosecution history. Mr. Ramey, this is Judge Stahl. Yes, Your Honor. How can you appeal this issue where you were found to have waived it by failing to timely object to the magistrate judge's report, and then also you never raised the issue of waiver on appeal in your blue brief? Yes, Your Honor. I'll address those one at a time. What we did, in fact, bring up the waiver issue in our appeal brief in pages 16 through 18 of our brief, so our ugly objections. It was particularly brought up, but addressing the other two points, Your Honor, starting with where the district court judge found that we had waived argument by not objecting to the magistrate's ruling, there was no Nettles notice, and I think we made this clear in our briefing, but there was no Nettles. Can I back up for a second? You said you raised the issue on appeal at pages 16 through 18. Is that of your blue brief? Yes, Your Honor. That's my, yes. In the objections, we did raise that issue. I don't think that that is. I don't see where you noted at all that the district court found that you had waived the issue by not objecting. I don't see where you're challenging that at pages 16 through 18. Okay. I was reading from the wrong portion, Your Honor. We did, in fact, challenge that the district court, we waived that objection in our motion for leave to file the amended, pardon me, to file the late claim construction objections. How we got there, though, to file those late objections was the fact that there was no Nettles notice. Let me back up for a minute. I'm asking you if, in your appeal before this court, you, in your blue brief, challenged the district court's finding of waiver. Yes, Your Honor. We did, in fact, challenge the district court's finding of waiver. If you go to our reply brief in this matter, we point out that- Did you challenge it in your opening brief on appeal? No, Your Honor. That was not challenged because it wasn't an issue we thought was brought up at the time. The way we had challenged it was through the motion for leave to file the claim construction objections. We thought we had maintained it through that maneuver, Your Honor. Notwithstanding the district court's holding that you had waived it by not objecting to the report of the magistrate judge. Yes, Your Honor. That was how we were- Raised that issue. Pardon me, Your Honor. I missed that last statement. You said you didn't think you needed to raise that issue in your opening brief? We had raised that issue, we thought, by maintaining the objections to the claim constructions. That's how we proceeded on that ground, arguing that the Nettles notice wasn't provided, and then, again, arguing that the claim construction was incorrect in providing that rationale. We got this basis from precedent from this court, particularly the Forsyth v. Principe case, 284, Fed 3rd, 1335, because the court had already passed upon those issues, the lower court, we knew. What we were trying to do is we weren't waiving any issues. The issue was before the court. We didn't think we had waived any issue at that time. Given the nature of the magistrate judge's claim construction decision, though, that Nettles notice doesn't apply, right? Because it's expressly provided for in the rules that objections must be made within a certain amount of time. Isn't that correct? Your Honor, I would respectfully disagree. In fact, the Douglas court from the Fifth Circuit addressed that particular point when it said, regardless of whether or not there's a local rule, if that notice is not there, that can't be held against the party that received the notice or the lack of the Nettles notice. I would refer the court further to Perales v. Casillas' 950, Fed 2nd, 1066, which further specifies that when there's no Nettles notice, untimely objections are considered in the Fifth Circuit. It's a penalty zone brief recognized that that issue would be controlled by Fifth Circuit law. Counsel, isn't there a difference between 72A and 72B with respect to the Fifth Circuit's rules and cases regarding whether notice is needed? Yes, Your Honor, there is a whether notice is needed, but here there is no notice at all. And so I think basically what the Perales case says is when there is no notice and objections have been filed, it disobviates the need. So the whole reason of the notice is to prevent sandbagging the appellate courts, bringing up new issues. This is an issue that was briefed during the Markman proceedings, argued during the Markman hearing, filed and claimed to trust objections, albeit outside the 14 days, but still filed those objections and then ultimately brought forward those same issues in the appellate brief. So there's been no... But Counsel, can you just, I want to focus on the actual rules. Is it true or is it not that Douglas was relating, was discussing 72B? That's correct, Your Honor. And that was on an earlier, in fact, an earlier version of the rule, of Rule 56, I think at the time, I forget the exact one, but that was an early version when there was a different period of time for objection. And that's why we went forward and followed that case all up and then cited the Prowlis case, the 9-55-10... Which is also a 72B case, correct? Your Honor, actually, Your Honor, that's talking about untimely objections. So I don't think that was directly applicable to this particular situation because we did, in fact, file objections later on. So whether or not it's on a dispositive matter or not, we did file those objections. We were anticipating, Your Honor, and I think a large part of the confusion here was that we received rulings on our objections, and that was our anticipation. They didn't come as quickly as we were hoping. So what we had done is we filed the late objections. And then further, I would add one more thing, Your Honor, that in an infringement analysis, this court is going to apply a correct construction of the term location and a correct construction of the term first computer to those issues. And so we think the issue is properly preserved because, like I said, we're not in any way sandbagging this court. We've been consistent in our positions throughout the proceedings. So you say that we regularly forgive waiver because we like to do our own analysis? No, Your Honor. I think that I would actually go back to the, if I may, and I disagree with that, I would go back to the Forty v. Principe case where the court articulated four ways in which it would consider an issue, even if it did determine that this was an issue first time brought up on appeal that the lower court hadn't passed on it, which is, we contend, not the issue here. But the third reason that the appellate courts may apply the correct law, even if the parties didn't argue it below, we think that is very applicable to the present situation where the court would apply the correct construction of the terms, even if it feels that maybe that issue had been not properly or been waived at the court below because doing this infringement analysis, the court will apply a proper construction. But again, we don't see that this is an issue passed on below because we've had this same issue consistently over and over and over again before the court. We haven't, in our minds, waived anything. And the district court, in fact, didn't consider objections. It just said we waived it so it's not entirely clear from our, from the order whether or not the court, the district court, considered a proper claim construction or not. It merely started with what the magistrate judge had construed the claims to be and made, paid no regard to determining whether or not that was a proper construction. Mr. Ramey, this is Judge Proust. Moving on to another issue before your time runs out, I just want to clarify it. It's more of a housekeeping issue, perhaps. On the 284 patent, you didn't appeal the invalidity determination of Claim 1 of 284 in this case, correct? That's incorrect, Your Honor. You appealed the invalidity determination of 284 in this case, Claim 1? Your Honor, my apologies. Pardon me. Pardon me. We left that issue, not to put too many issues before the appellate court for the Copen and Verizon Sprint case, Your Honor. My apologies. That is correct. Okay. So you didn't appeal the invalidity determination in this case. This case is separate and distinct from the other cases. That determination is therefore final, correct? And as a matter of collateral, let me finish my question, please. And as a matter of collateral estoppel, that claim is invalid and cannot be asserted. Am I right about that? Your Honor, I would, again, refer the courts to the 4C versus Principe and the four reasons that they articulated for considering issues like that. No, we wouldn't consider that that claim is necessarily invalid. Are you arguing that you didn't appeal it in your briefs, but you're appealing it now at oral argument? No, Your Honor. No, Your Honor. Okay. So the issue was decided below and you appealed other issues and you did not appeal that issue, right? Yes, Your Honor. That's correct. Okay. So why is there not collateral estoppel with that determination is therefore final, right, in this appeal, the determination of invalidity based on indefiniteness, right? I don't know, Your Honor, because we did discuss in our reply brief the appellee's position regarding Claim 1 not being adequately disclosed. We do feel we addressed the issue. It wasn't one of our principal issues that we addressed, but we did handle it in our reply brief. Well, firstly, I mean, do you understand the difference between the original brief, the blue, what we call the blue brief and the gray brief, and that we look to the blue brief to preserve issues and not issues in reply? You appreciate that, right? Do you understand that? Yes, Your Honor. Pardon me, Your Honor. Yes, Your Honor, I do. I think that when the issue wasn't, when the issue was raised by the appellees concerning those issues, we addressed our arguments that they made, and then that issue is properly disclosed. You want to show me where you made the argument in gray? Not that I'm conceding that would be just looking at gray. You're saying you appealed it in gray? Your appeal of that issue was in gray? Hold on one second, Your Honor. I'm sorry. I'm not finding that citation right now. Well, maybe I'm missing something, but I'm not seeing it. Maybe you can point me to it. Because I thought you just said you did argue it in gray. And I, Your Honor, may have... So, let me ask you. I mean, you can come back and reply if you find something, but assuming that we don't find something in either blue or gray, that I'm correct, therefore, that that issue, that determination is final and can be used as a basis for collateral estoppel? I think that the court could take that tact. I think that we would argue still that the Forshee case allows the court to consider that this is exceptional circumstances, allows the court to consider the two appeals as they relate to one another. And if it determines through the Sprint and Verizon case that the claim should not have been invalidated, then it wouldn't be invalidated in the Nokia case. But I do understand the court's reasoning that would be one possible avenue. And I'll reserve the rest of my time, Your Honor. Thank you very much. All right. Anyone on the panel have any further questions? Okay. Let's hear from the other side. Mr. Hamstra. Thank you, Your Honors. May it please the court, Nathan Hamstra on behalf of the Nokia entities. I'd like to start on the waiver issues about which... I'm sorry, Mr. Hamstra. I don't want to take too much of his time. This is Judge Prouts. But it would be helpful for me. There are a bunch of related... There are four related district court cases that were cited at the beginning of the brief. And I just wanted some clarity from you just in terms of knowing between this case and the second case. There are two other cases that have been stayed. And we want to... Can you just briefly explain what issues are related to which cases? Those other cases are about entirely different matters. So, Your Honor, I am very familiar with one of those other cases because Nokia is a party to another one. I'm somewhat less familiar with the other case up on appeal here. And I am not really familiar with the fourth case. I think that may be an AT&T case. Okay. Well, we know what the other case is here. So just tell us about your other Nokia case. That would be helpful. Okay. So there is a... The patterns asserted there are in the same family. There are largely shared issues with similar claim language relating to location in particular. And one of the bases we submitted or we desired for staying in that case is that the location and potentially computer issues from this appeal are going to be largely if not totally dispositive of that case as well. So we're talking about the two claim constructions presented in this case? Correct. Would affect that case. Okay. Thank you. That's helpful. Sorry to take your time. No worries. Thank you. First of all, Your Honors are exactly right that the Prowley's and Nettles cases, Fifth Circuit cases, though I don't think expressly referring to Rule 72B, do refer to 28 U.S.C. 636B1B. And Rule 72B governs referrals of dispositive matters under that statutory provision. 28 U.S.C. 636B1A is the provision regarding non-dispositive matters, and that is governed by Federal Rule of Civil Procedure 72A. The Federal Circuit has already addressed the effect of a failure to file objections within the time period in the Fifth Circuit, and it's Talbert decision, which we cited in our papers, and it does amount to a waiver. You occasionally... Have you cited anything from the Fifth Circuit with respect to 72A other than non-precedential decisions? Your Honor, give me a moment. I thought we had cited that in our response brief. Well, there's a lot of non-precedential decisions. Right. So, Your Honors, the Martin v. Thomas and United States v. Renfro decisions, we cited after the non-precedential Federal Circuit Talbert decision address waiver under 72A or 636B1A. And those are... Precedential. From the Fifth Circuit. From the Fifth Circuit, correct. Okay. And there's a footnote talking about the interplay between Rule 72A, footnote 6, and 636B1A. Mr. Hamstra, your friend on the other side seemed to think that our concerns we should have on this and also on the indefiniteness issue. Now, I don't know that he cited that case in either the blue or the gray brief, so you may not be familiar with the case because it wasn't raised in the briefing. But are you, and if you are, do you have anything to say about that? I apologize, Your Honor. It was not cited and I am not familiar with the case. I'm not... I was searching for it during his argument and was not able to locate it. And it was not cited in his briefs, correct? Not from my recollection and not from my scan of the cited authorities. And then in addition, turning to some other questions referenced by Your Honors, I agree. Based on my reading of the briefs, the issue of Claim 1 of the 284 patent was not addressed. You know, as Your Honors are aware, we submit that Traxel has waived its claim construction argument, so I wanted to quickly proceed and touch on some of the summary judgment of non-infringement issues. Could I just ask you quickly just one more thing, leaving waiver aside. Location is a term in every claim that I think that's in dispute. So if we reach the merits and we agreed with you on the location, would we need to discuss the second amendment, the, you know, the other claim construction issue presented here? You would not. Location is dispositive of all claims and the computer basis for non-infringement is just a second independent basis for all but one of the claims. Okay, thank you. So turning to summary judgment on the location, first, we submit that it's undisputed and there is no evidence in the record citing to the contrary that the accused Nokia products do not use location for individual wireless devices. So Nokia's witnesses testified that the KPIs, these key performance measurements that Traxel cites are collected across an entire cell. That's at pages 3618 through 39 of the appendix. The same witness testified that the accused products don't, quote, work with wireless devices, unquote, because the Nokia products do not, quote, know which devices generated the data, unquote. That's at page 3616 of the appendix. So that's the best record evidence of how the Nokia products work and we don't track location on a per device, on a wireless device basis. Well, Mr. Hamster, one of your friend's responses to your argument, I think, is that if a single phone is in a grid, then the average location will correspond to that one device. That seems like a stretch to me, but I wondered if you wanted to comment. Sure, I agree that it's a stretch. There will be a measurement for that sector that hypothetically, putatively, I don't think he has presented sufficient evidence to defeat somebody's judgment that this is something that has actually occurred. But there would be a measurement that's an average of one device, but there's still no knowledge of which device it was that generated that average measurement over that cell. So in that sense, the Nokia Q's products still do not know the location of any particular device. Counselor, can I ask you, did the magistrate judge recommend a finding of non-infringement on alternate grounds? I read two different grounds for which the magistrate judge, on which the magistrate found no infringement, but really only one seems to have been the subject of objections to the district court. That is our position, Your Honor, that Traxel did not object to the first ground that I just referenced here. They argue otherwise, and Your Honors can obviously make your determination on the papers. But yeah, we do not believe that that ground was raised in their objections. The second location argument, an independent one, is that what Traxel is pointing to for its infringement analysis is, as admitted by their own expert, merely a position in a grid pattern. And there are many, many citations to their expert's testimony at pages 63 through 67 or 68 of his deposition transcript, and I submit that it's pretty clear that the Traxel's expert was identifying the Nokia locations, which are, you know, at best sector or cell level locations, as a position in a grid pattern. And here's what he said at page 68, which appears on page 3119 of the appendix. He was asked, if the map were divided into cells covered by individual base stations, isn't each cell a grid in a grid pattern? And their expert responded, well, I mean, you can say if you make your geographic divisions in that way, you could identify each cell as a grid in a pattern of grids that covers a certain geographic area with cells, right? I mean, sure. So he was clearly adopting that position, and the reason why he was doing that wasn't because he was making some nuanced argument that, well, there's a sector in a particular cell or anything like Traxel characterizes it. He came to that conclusion because he was interpreting the claims instruction as, in fact, broadening the definition of location outside grid patterns, and that's probably most plainly stated at, again, appendix 3119, page 66, lines 9 through 15 of his deposition, where he said, and so the word said, is not merely. In other words, it's not exclusively a position in the grid. It could be a position that has nothing to do with any grids. And that's my view. And speaking of this appendix that you're citing us to, I mean, there's so much stuff in here that is marked confidential. How are we supposed to issue a decision, in part perhaps based on what you just referenced, if we're not allowed to reference it? Your Honor, I think I can say on behalf of Nokia that in terms of our RCBI, anything discussed in the briefs and in the portions of the deposition cited by the briefs is fair play for Your Honor's opinion. Okay, so that pretty much allows us to ignore almost all these designations, right? Correct. Okay. And, you know, I will just say for the record, Mr. Hamstra, Mr. Raney, I mean, I appreciate that you're removing the designations at this point, but that's not the way to go in our court's view generally, just because we care about public notice of stuff that really shouldn't be marked confidential and the briefs that have been made available to the public do not include those designations. So for future use, I hope you'll bear that in mind. Thank you, Your Honor. And, Your Honor, unless the panel has further questions, that's all I wanted to touch on. Thank you. Mr. Raney? Yes, Your Honor, thank you very much. I wanted to briefly go back and address the point of Martin v. Thomas that he cited, but he said those were presidential opinions from the Fifth Circuit on waiver. The Martin case, for one, had to do with a qualified immunity decision and an issue of law that there were no objections ever filed. So it's a very different set of facts. Our contention is, or Traxell's contention is, that we did file objections. We made the same arguments all along the way to the court. So it wasn't the first chance the court saw the issue we were raising. It's not the first chance that the issue has been presented to the district court for review. We made these arguments, the same arguments and facts. Better, we hope, as we progress further down the case, but the same exact arguments to the court so that it wouldn't result in a waiver. And I just take the court back, if I could, to the Perales v. Casillas case that, pardon me, may I finish my line of thought? Yes, please do. Yes. The Perales, thank you very much, Your Honor, the Casillas case that clearly says that when objections are filed, even if they're untimely, they will be considered in the Fifth Circuit. Thank you very much, Your Honors. Well, Mr. Raney, before you sit down, I just had one question. You were still looking in gray for something about the indefiniteness argument. I assume you have not found it. Your Honor, I apologize to the court. I misstated. I was confusing my appeals. We did not make that argument. Thank you. We thank both sides, and the case is submitted.